JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Christopher Miller appeals from a decision of the Cuyahoga Court of Common Pleas denying his motion for a new trial. On appeal, defendant claims that the State failed to provide exculpatory evidence. For the following reasons, we reject his contention and affirm the decision of the trial court.The record presented to us on appeal reveals the following: On January 30, 2002, defendant was convicted of intimidation in violation of R.C. 2921.04, aggravated burglary in violation of R.C. 2911.11, kidnapping in violation of R.C. 2905.01, aggravated robbery in violation of R.C. 2911.01, felonious assault in violation of R.C. 2903.11 and rape in violation of R.C. 2907.02. He appealed from the judgment and this court affirmed his convictions inState v. Miller (Jan. 16, 2003), 2003 Ohio 164.[1] Defendant thereafter filed a motion for new trial or post-conviction relief arguing that the State suppressed the identity and statements of two witnesses who lived in the same apartment building as the victim and attended the victim immediately following the attack.
 {¶ 2} On October 3, 2002, the trial court conducted a hearing on defendant's motion. On October 23, 2002, the trial court denied defendant's motion and filed findings of fact and conclusions of law. Defendant timely appealed and raises one assignment of error for our review.
 {¶ 3} "I. Defendant was denied due process of law when he was not granted a new trial."
 {¶ 4} In his sole assignment of error, defendant argues that the State improperly suppressed evidence favorable to his defense. The State maintains that the evidence was not exculpatory in nature and would not likely have changed the outcome of the trial. The issue here is whether the State improperly withheld material evidence from the defendant, thereby depriving him of a fair trial.
 {¶ 5} The prosecution's failure to disclose evidence favorable to the accused upon request constitutes a violation of the Fourteenth Amendment's due process guarantee of a fair trial when "the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland (1963), 373 U.S. 83,87; State v. Jackson (1991), 57 Ohio St.3d 29; State v. Johnston (1988),39 Ohio St.3d 48.
 {¶ 6} In determining whether the prosecution improperly withheld evidence favorable to the accused, such evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley (1985), 473 U.S. 667,682; Johnston, supra, at paragraph five of the syllabus; State v.Wickline (1990), 50 Ohio St.3d 114. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, is not sufficient. State v. Hughes
(Nov. 4, 1993), Cuyahoga App. No. 62884, citing United States v. Agurs
(1976), 427 U.S. 97, 109-10. It is the defendant's burden to prove aBrady violation and denial of due process. Jackson, supra, at 33.
 {¶ 7} With these principals in mind, we proceed to evaluate whether the undisclosed evidence, i.e., two witness statements given to the police the day after the attack, would have affected the outcome of the trial.
 {¶ 8} Here, Beth Llewellyn, in her statement to the Cleveland Heights police on the day after the incident, which led to the defendant's convictions, indicated that the victim entered her apartment upset and screaming. She stated that the victim first told her that she had been raped by a black man, and later by two males. She also stated that she was confused by the victim's multiple stories and that the victim was very upset.
 {¶ 9} Benjamin J. Feinberg, in his statement to the Cleveland Heights police on the day after the attack, stated that the victim initially identified two black assailants, but later could only identify one of the males as black. He stated that the victim made several comments about her ex-husband, including that she had a restraining order against him, and that "he couldn't have done this because he has no black friends." He stated that the victim seemed "unsure, almost like she thought it was her husband but didn't want to admit it." He also stated that he had not heard any loud noises in the hallway and would have heard any commotion in the hallway. Defendant claims that Llewellyn's and Feinberg's statements to the police amounted to exculpatory evidence which should have been provided to the defense by the State. He claims that their statements demonstrate the inconsistency of the victim's statements immediately following the attack and her suspicion that her ex-husband was involved in the attack. We are not persuaded that there is a reasonable probability that the outcome of the trial would have been different had Llewellyn's and Feinberg's statements been provided to the defense. First, the victim's statements to Llewellyn and Feinberg regarding the identity of her assailants, minutes after she had been raped and beaten, were not inconsistent with her trial testimony. The victim, while very upset, told the witnesses that there were two black males, but then stated that she could only identify one of them as black. Her trial testimony was essentially the same, in that she stated that she did not get a good look at the second male because he was in the background and her face was turned and then covered with a dish towel.
 {¶ 10} Also, we are not persuaded that Feinberg's statement that he did not hear any loud noises in the hallway had any exculpatory value. The victim testified that the initial attack occurred in the rear stairs of the building, not in the hallway. The victim also testified that once inside her apartment, she was threatened with a gun and told not to make any noise or scream. Accordingly, Feinberg's statement that he had not heard any loud noises that evening would not have impeached the victim's credibility.
 {¶ 11} The strongest argument made by defendant concerns the victim's statement that her ex-husband was somehow involved in the attacks. However, even if such evidence had been potentially useful to the defense, mere speculation that it would have affected the outcome of the trial is an insufficient basis to grant a new trial. Feinberg stated that the victim mentioned her ex-husband several times, but also stated that she said "he couldn't have been involved because he has no black friends." Moreover, Feinberg's interpretation of the victim's statements regarding her ex-husband were speculative and therefore inadmissible.State v. Hughes, supra, citing United States v. Rogers (C.A. 10, 1992),960 F.2d 1501, 1510-11.
 {¶ 12} Accordingly, we are unable to conclude that the evidence suppressed herein was materially exculpatory. See Ibid; State v.Hadlock (Nov. 24, 1993), Cuyahoga App. No. 63893; State v. Hughes
(July 19, 1990), Cuyahoga App. No. 57165
 {¶ 13} Defendant's sole assignment of error is overruled.
Judgment affirmed.
TIMOTHY E. McMONAGLE, J., and ANTHONY O. CALABRESE, JR., J., CONCUR.
[1] The matter was remanded for resentencing in compliance with R.C. 2929.14(E)(4).